| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:24-cr-00083(KAD) |
| | : | No. 3:16-cr-00109(KAD) |
| v. | : | |
| | : | |
| KYLE PETERSEN | : | June 25, 2025 |

## GOVERNMENT'S SENTENCING MEMORANDUM

"I need you to walk away from today realizing that what you did was a very serious crime. I mean, the mere fact that there is a ten-year mandatory minimum tells you something about how serious Congress views it. And the maximum is life. You could go away forever for doing what you did. You know, I don't think that's appropriate because you haven't served significant sentences in the past, and this ought to be an incremental punishment over what you've done in the past, but don't think about doing it again. Some judge is going to look at this and say, 'Wow, he didn't get it,' and your sentence will be one that you may not survive, frankly."

Hon. Stefan R. Underhill, *United States v. Kyle Petersen*, Sent. Tr. at 25. 3:16-cr-00109-KAD, Doc. 317.

The Government submits this memorandum in aid of the sentencing of the defendant, Kyle Petersen, which is presently scheduled for July 3, 2025. ECF No. 56. On April 2, 2025, the defendant pled guilty (ECF No. 63) to Count One of the Indictment ("Indictment") (ECF No. 13), charging him with Conspiracy to Distribute and to Possess with the Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), 841(b)(1)(C) and 846. The Government submits this memorandum in response to the Defendant's Sentencing Memorandum filed on June 16, 2025 ("Defendant's Sentencing Memorandum") (ECF No. 74). The Government respectfully asserts that a sentence at or near the statutory minimum of 120 months of incarceration, would adequately serve the purposes of sentencing. Plea Agreement at 5-6; PSR ¶¶ 100-101. The Government also respectfully asserts that a sentence in the Guideline range between

1

27 to 33 months, to be served consecutively, would adequately serve the purposes of sentencing in the supervised release case.

I.  BACKGROUND

A.  The Offense and Relevant Conduct

The basic and uncontested facts of this offense are summarized accurately at paragraphs 6-27 of the Presentence Report ("PSR") (ECF No. 72).

II.  STATUTORY AND GUIDELINES EXPOSURE

A.  Statutory Exposure

Based on his plea of guilty to a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii) and 846, the defendant faces a maximum term of imprisonment of life, and a mandatory minimum term of imprisonment of 10 years, a minimum term of supervised release of five years and a maximum term of supervised release of life and a maximum fine of $10,000,000, and a special assessment of $100. *See* PSR ¶¶ 100-115.

B.  Guidelines for the Instant Offense

In the Plea Agreement, the parties agreed that the defendant's base offense level was 32. Three levels are subtracted for acceptance of responsibility, resulting in a total offense level of 29. The parties believed the defendant to fall within Criminal History Category III. See Plea Agreement at 5-6. An adjusted offense level of 29 and a CHC III, results in a Guideline range of 108 to 135 months' imprisonment. Plea Agreement at 5. The U.S. Probation however, calculated a total offense level of 27 and a criminal history category III. PSR ¶¶ 42, 53. Under Probation's calculation, the Guideline Range is 87 to 108 months. The Government agrees with USPO's calculation of the Guideline Range.

The parties also agreed in the plea agreement that the defendant faces a guideline range of

27 to 33 months' imprisonment for his violation of supervised release based on his prior criminal history category of II and because the violation is a Grade A violation.

    C. <u>Parties' Agreement Regarding Departures & Non-Guidelines Sentences</u>

The defendant agreed that he would not appeal or collaterally attack his sentence provided that the sentence does not exceed 135 months of imprisonment, a lifetime term of supervised release, a $10,000,000 fine and a $100 special assessment for the criminal conduct charged in the indictment, and 33 months of imprisonment for the violation of supervised release. Plea Agreement at 8. The parties also agreed that the Guidelines identified in the Plea Agreement were not binding on the Court. Plea Agreement at 3.

<u>LEGAL STANDARD</u>

Following the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220, 243–45 (2005), which rendered the Sentencing Guidelines advisory rather than mandatory, a sentencing judge is required to: "(1) calculate[] the relevant Guidelines range, including any applicable departure under the Guidelines system; (2) consider[] the Guidelines range, along with the other § 3553(a) factors; and (3) impose[] a reasonable sentence." *See United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir. 2006). Under 18 U.S.C. § 3553(a), the sentencing court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." In determining the particular sentence to be imposed, the court shall consider the following factors:

    (1) "[T]he nature and circumstances of the offense and the history and characteristics of the defendant;

    (2) the need for the sentence imposed—

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

**3**

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [in the Sentencing Guidelines];

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense."

18 U.S.C. § 3553(a). The Second Circuit reviews a sentence for reasonableness. *See Booker*, 543 U.S. at 260–62. The reasonableness standard is deferential and focuses "primarily on the sentencing court's compliance with its statutory obligation to consider the factors detailed in 18 U.S.C. § 3553(a)." *Id.*

### III. DISCUSSION

Applying the relevant factors to this case, the Government submits the following for the Court's consideration.

#### A. Specific Deterrence

Here's what didn't stop Kyle Petersen from dealing fentanyl:

1. A 10-year federal prison sentence.

2. Being an inmate in the BOP's home confinement program.

3. Being on supervised release.

4. Seeing his brother die from a fentanyl overdose.

5. Seeing his sister die from a fentanyl overdose.

6. Having a legitimate job where he made over $100,000 per year.

If none of these individually or in combination stopped Kyle Petersen from dealing fentanyl and other drugs then it is reasonable to conclude that nothing will. If that is the case, as it appears, then the only thing that will keep the public safe is to separate Kyle Petersen from the public.

B. History and Characteristics of the Defendant

In 2010, Mr. Petersen was convicted in state court of Possession with Intent to Sell and sentenced to serve 3 years of a 7-year prison sentence. In 2016, Mr. Petersen was charged in federal court with Conspiracy to Distribute and to Possess with Intent to Distribute 400 Grams or More of Fentanyl. He was sentenced to 120 months' imprisonment and five years' supervised release. In that case, Mr. Petersen conspired to distribute 2.5 kilograms of fentanyl, 3.2 kilograms of MDMA, 12/5 grams (2500 5mg) oxycodone pills, and 50,000 units of Xanax. Mr. Petersen began his sentence on September 28, 2017, but was released after only 3 years, 7 months due to the COVID-19 pandemic. Mr. Petersen returned to dealing drugs almost immediately. Indeed, Mr. Petersen was selling drugs while still an inmate in the BOP's home incarceration program, before starting his term of supervised release. During this period—post federal incarceration, but before the instant arrest—Mr. Petersen was earning a salary of $110,000 a year as a plumber.

Despite extreme leniency from the BOP in releasing him from his 10-year prison sentence early, Mr. Petersen returned very quickly to dealing drugs. Instead of seeing this leniency as an opportunity to get on the right path Mr. Petersen took it as an opportunity to contribute to the opioid epidemic. Despite obtaining a legitimate job and making a very good living, Mr. Petersen wanted to make even more money by returning to dealing fentanyl, methamphetamine, protonitizine and other drugs.

In the PSR, Mr. Petersen describes a childhood where his parents were around, but that they did not take much interest in the children. He notes that his parents did not provide much positive guidance for him and his siblings. The PSR also notes that two of Mr. Petersen's siblings passed away from fentanyl overdoses. Despite seeing the dangerousness of fentanyl and how overdose deaths can occur and knowing firsthand the pain it can cause families, Kyle Petersen continued to distribute fentanyl to members of his community.

C. Promote Respect for the Law[1]

It is clear that the 10-year prison sentence that Kyle Petersen received had no deterrent effect on him, as he returned almost immediately to selling drugs. Indeed, he sold drugs after being released early from his BOP confinement due to COVID-19. He started selling drugs so quickly, that he was still an inmate in the BOP's home confinement program. He continued dealing drugs while on supervised release. This is the conduct of someone who could not care less about the law. This conduct shows an utter disrespect for the law.

D. Seriousness of the Offense[2]

This was a very serious offense. Kyle Petersen is responsible for: 1171 grams of methamphetamine, 42.76 grams of fentanyl, 40 grams of cocaine, 28 grams of MDMA, 989 grams of protonitizine and 43 grams of Bromazolam. Protonitazine is a synthetic opioid that is equally as potent, if not more potent, than fentanyl. It has been scheduled under the Controlled Substances Act as a Schedule I substance since approximately April 12, 2022, and, as such, is generally recognized to have a high potential for abuse, and no currently accepted medical use. This is a lot of drugs. It is important to remember however, that it does not account for all of the drugs that

---

[1] This factor, to promote respect for the law, cannot be considered by the Court in imposing a sentence for the violation of supervised release.
[2] This factor, seriousness of the offense, cannot be considered by the Court in imposing a sentence for the violation of supervised release

Kyle Petersen was dealing. There were 34 parcels shipped from Michigan to Kyle Petersen's address that vey likely contained drugs as they all matched the general description as the two packages that were intercepted (which also came from Michigan) which contained Protonitazine. Because Kyle Petersen was purchasing his drugs from the dark web, where multiple types of drugs are available, and because he was selling multiple types of drugs, investigators cannot say with certainty which type of drug those 32 other packages contained—although they are almost certain that they contained illegal drugs. As such, those other packages are not taken into account in determining Kyle Petersen's drug quantity, and therefore, guideline range. If those packages were taken into account, it would make an already serious crime even more serious.

E. Specific Deterrence

Kyle Petersen's protests about the methamphetamine guideline range recommendations are demonstrative proof that he does not understand the significance of his criminal conduct. His argument boils down to: I was selling less potent methamphetamine than what is commonly sold, so my crime should not be punished as severely. This argument shows that Kyle Petersen doesn't get it. He does not understand that Congress could find *both* that small quantities of highly potent methamphetamine and large quantities of less potent methamphetamine are both substances that need to be punished severely. Methamphetamine pills with low potency of meth can be distributed more widely, thereby creating more risk of addiction, overdose, violence and crime. Recognizing this danger, Congress created two ways to punish meth dealers, pure weight (high potency) and a mixture and substance containing a detectable amount of methamphetamine (lesser potency). This is not a mistake on the part of Congress, but rather a recognition of the unique dangerousness of the drug. Moreover, Congress routinely sets mandatory minimum sentences based on quantities of drugs irrespective of potency. 21 U.S.C. 841(b)(1)(A) prohibits heroin, cocaine, cocaine base,

PCP, LSD, fentanyl and marijuana all based on "a mixture or substance containing a detectable amount." Each of those, based on its specific quantity is punishable by a ten-year mandatory minimum sentence.

IV. CONCLUSION

Considering the nature of his offense and the other factors outlined in § 3553(a), the Government respectfully asserts that a sentence at or near 120 months for his criminal sentence and a consecutive guideline sentence between 27 to 33 months for the supervised release violation would adequately serve the purposes of sentencing.

Respectfully submitted,

DAVID X. SULLIVAN
UNITED STATES ATTORNEY

*/s/Brendan Keefe*
BRENDAN KEEFE
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct28689
Office of the United States Attorney
157 Church Street, 25th Floor
New Haven, CT 06510

C E R T I F I C A T I O N

       I hereby certify that on June 25, 2025, the foregoing Memorandum was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

                                      */s/Brendan Keefe*
                                      BRENDAN KEEFE
                                      ASSISTANT UNITED STATES ATTORNEY